IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF SAXON ASSET SECURITIES TRUST 2005-3 MORTGAGE LOAN ASSET BACKED NOTES, SERIES 2005-3,<br><br>      Plaintiff,<br><br>  v.<br><br>JAMES F. GRESIK and VIRGINIA L. GRESIK,<br><br>      Defendants. | No. 10 C 5120 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deutsche Bank Trust Company Americas as Indenture Trustee for the Registered Holders of Saxon Asset Securities Trust 2005-3 Mortgage Loan Asset Backed Notes, Series 2005-3 has filed a motion for summary judgment. For the reasons that follow, that motion is granted.

On or about September 1, 2005, Mercantile Mortgage Company ("MMC") lent defendants James F. Gresik and Virginia L. Gresik $456,000.00 to purchase a house in Riverside, Illinois. Defendants executed a Note in favor of MMC. Defendants agreed to pay 6.75 percent in interest and also agreed to pay taxes, insurance and any other escrow items that might apply. Defendants agreed to make monthly payments on the first day of the month in the amount of $3,266.84. Mortgage Electronic Registration Systems, Inc.

("MERS"), as nominee for MMC, secured the interests in the Note by filing a Mortgage with the Cook County Recorder on September 21, 2005. On or about September 21, 2006, MERS, as nominee for MMC, assigned its Mortgage to Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company), as Trustee and Custodian. On or about April 1, 2010, Deutsche Bank Trust Company Americas assigned its Mortgage to the plaintiff. An allonge was attached to the Note transferring ownership to Saxon Mortgage, Inc., which was subsequently endorsed to blank. Plaintiff is in possession of the Note and the allonge (endorsed to blank). Plaintiff thus received all of MMC's interests in the property pursuant to the Mortgage and the Note. Defendants have failed to pay the monthly installments of principal, interest, taxes, insurance and escrow since July 1, 2006.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows that there is no genuine issue of material fact, the burden of proof shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiff argues that it is entitled to summary judgment

because there are no material issues in dispute. Defendants have failed to make all payments due under the Note, are in default, and have been for years. According to plaintiff, the entire unpaid balance of the Note is therefore due and payable according to the terms of the Mortgage. Based on the language in the Note and Mortgage, plaintiff maintains that defendants owe the unpaid balance, interest, expenses, late charges, attorney's fees and costs. Plaintiff asserts that the total indebtedness as of September 17, 2010 is $686,310.33 with unpaid interest accruing at $93.79 per day thereafter plus reasonable attorney's fees and costs.

First, I note that defendants do not dispute that they are in default or that they owe any amounts due under the Note/Mortgage to plaintiff. Thus, based on the undisputed facts listed above, I conclude that defendants are in default and owe plaintiff certain amounts due under the Note. The question that needs to be resolved, then, is precisely how much defendants owe to plaintiff. Defendants argue that there is a factual dispute as to the amount of the outstanding indebtedness. Relying on Federal Rule of Civil Procedure 56(d), defendants argue that summary judgment should be denied because they need additional discovery from plaintiff relating to: (1) the amount of escrow due; (2) the amount of expenses incurred; and (3) plaintiff's participation in the Home Affordable Modification Program ("HAMP").

Turning first to the issue of escrow, I note that plaintiff states that the outstanding amount due for escrow is $53,452.57. In support of this, plaintiff submitted an affidavit from Johnna Miller, a Senior Specialist at Ocwen Loan Servicing, LLC, in which Miller averred that she is responsible for maintaining records for the defendants' Note and Mortgage. According to Miller, defendants, as of September 17, 2010, owed $53,452.57 in late escrow payments.

In response, defendants argue, "With respect to the escrow amounts due, the Plaintiff had provided no documentation relating to the specific advances that it made; rather, it has only provided summaries of amounts paid, without even a reference as to what those amounts relate to." Resp. at 8. They go on to conclusorily state that "the amounts alleged by the Plaintiff may not accurately reflect amounts actually paid" because "the amounts alleged by the Plaintiff to be outstanding for escrow advances is [sic] inconsistent." *Id.* Presumably, defendants expect the court to do their work for them as they have presented no other argument on this point, nor have they explained what is "inconsistent" about the $53,452.57 figure.[1] Plaintiff explained in reply that the

---

[1] Defendants point to no "inconsistencies" with respect to the amount of escrow due as of September 17, 2010. Defendants' attempt to point to alleged inconsistencies between two debt collector letters sent in early 2011 is rejected as both letters list the outstanding escrow balance, as of January 3, 2011, as $59,020.56. Defendants apparently missed the fact that the second "reinstatement" letter merely listed the outstanding escrow in two

4

escrow balance changed over time, given additional disbursements for taxes and insurance. The balance of $70,219.71 listed in plaintiff's interrogatory response reflects the amount owed as of July 1, 2011, while the $53,452.57 reflects the amount owed by defendants as of September 17, 2010. Without a developed argument on this point, I am not convinced that defendants need additional discovery. Plaintiff has provided admissible, uncontested evidence from a knowledgeable source that the escrow balance, as of September 17, 2010, was $53,452.57. Thus, I conclude that defendants owe plaintiff that amount.

Next, defendants argue that they need additional discovery concerning "other fees and charges" which plaintiff has asserted must be paid by defendants. Rather frustratingly, defendants have once again presented their argument in two sentences. They state, "Plaintiff has again submitted only summary information, without showing any specific underlying invoices or receipts (which were specifically requested by Defendants). The approximately $10,000 in "prior servicer" fees is especially concerning to Defendants, given that Plaintiff's responsive interrogatories indicate it has not been able to locate supporting documentation for these charges."

---

separate entries as a $38,981.80 "Escrow Shortage" and a $20,038.76 "Additional Escrow Advance." *See* Docket #39-4 at 45.

5

Because the only charge defendants actually discuss is the $9,624.91 listed as "prior servicer fees," I will turn to that issue first. In responding to defendants' interrogatory concerning expenses incurred with respect to this action, plaintiff lists, among other things, an entry which states, "Prior Servicer Fees - $9,624.91 - investigation continues as to the breakdown of the costs from the prior servicer." Plaintiff explained in reply that it is unable to provide specific receipts for these transactions because "the servicing of the Defendants' loan was transferred from one company to another and the current servicer's access to the prior servicer's records are [sic] limited to what was provided at the time of the transfer." Reply at 2. "What was provided at the time of the transfer" is an Account History from the prior servicer, Saxon Mortgage Services. *See* Docket #39-4 at 78-80. In this document, Saxon lists various uncollected fees, which include identifiers such as "property inspection fees," "expense advances," and "breach fee." While more detail would be preferable, I conclude that plaintiff has provided sufficient evidence of these past expenses through the Saxon document. Defendants have provided no argument or evidence which would lead me to believe that Saxon's records are suspect. Thus, defendants owe plaintiff $9,141.24[2] in

---

[2] In arriving at the $9,141.24 figure, I added the expenses listed in the Saxon documnt. *See* Docket #39-4 at 78-80. My calculation of the "prior servicer fees" is slightly lower than the $9,624.91 plaintiff claimed was owed.

expenses related to "prior servicer fees." Plaintiff's request for reimbursement for the remaining items is supported by Miller's affidavit and defendants have not made any specific arguments against these charges. While defendants claim that plaintiff should proffer individual invoices for these charges, Miller's affidavit is sufficient. Thus, defendants owe plaintiff a total of $10,410.70 for expenses.[3] Finally, defendants claim that they need additional discovery because plaintiff failed to provide defendants with any documentation concerning the HAMP calculations it did in connection with considering defendants for a loan modification. Once again, defendants failed to provide much explanation of their argument. From what I can gather, defendants do not dispute that plaintiff in fact considered them for a HAMP modification, but determined that defendants did not qualify for such a modification. Defendants argue that they cannot contest plaintiff's HAMP determination without seeing plaintiff's calculations.

Given defendants' complete failure to explain the legal significance of any alleged deficiencies concerning HAMP, I find that they have waived this argument. *See United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2011 (failing to develop argument in

---

[3] I rely on Miller's affidavit, Pl. Ex. 5, for these figures with one exception. Instead of the $9,624.91 identified by Miller for "prior servicer fees," I have instead included $9,141.24 as discussed above.

meaningful way waives argument). They provide no explanation whatsoever as to why, even if plaintiff in fact failed to properly calculate their HAMP eligibility, that would prevent plaintiff from foreclosing. Given this complete lack of development, I find this argument waived.

Thus, defendants owe plaintiff the following amounts: $453,114.70 (principal balance of Note); $53,452.57 (escrow balance); $2,125.46 (late charges); $166,723.23 (unpaid interest from 7/1/06-9/17/10) with $93.79 per day[4] thereafter; and $10,410.70(expenses). *See* Pl. Ex. 5. Further, plaintiff has claimed $2200.00 in attorney's fees, and I award that amount as reasonable. In addition, I award $106.00, which represents a recording fee, for a total of $2306.00 in attorney's fees and costs.[5] *See* Affidavit of Attorney's Fees, docket #38.

For all the foregoing reasons, plaintiff's motion for summary judgment [36] is granted. Plaintiff is awarded $688,132.66 plus interest of $93.79 per day after September 17, 2010. Within two

---

[4] I note that this amount is listed in Miller's affidavit. Defendants present no argument that this calculation of daily interest is incorrect.

[5] Plaintiff requested a total of $2796.00 in attorney's fees and costs. *See* Affidavit of Attorney's Fees. In plaintiff's attorney's affidavit, he listed $2200.00 in attorney's fees, $140.00 in process server expenses, $106.00 in recording expenses and $350.00 in court costs. Because the process server fee and court costs were already included in the total expenses in Miller's affidavit, I have taken them out of the allowed amount for attorney's fees/costs.

8

(2) days, plaintiff must provide my courtroom deputy with a revised proposed Judgment of Foreclosure, which is consistent with this opinion.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 26, 2011